LEWIS BURNES *et al.* v. THE MAYOR AND CITY COUNCIL OF ATCHISON, *et al.*

*Error from Atchison County.*

The charter of Atchison (Sec. 11, Act of 1858,) confers the power of general taxation to the amount of one per cent. upon real and personal property, and then proceeds (Id. and Sec. 4, Act of Feb. 11, 1859,) to authorize the levy of a special tax on the holders of the lots on every street, &c., to be levied by the front foot or by the assessed value thereof, for street improvements, in addition to the general tax, thus granting the power upon all or any of the streets, &c., as distinct taxation districts.

Sec. 24 of the Organic Act, conferred upon the Territory all the legislative power of a State government, unrestricted by its constitution, except in particulars therein stated not affecting this question.

The granting of municipal powers, including powers of local taxation for improvement of streets, &c., to cities, is an ordinary act of legislation, and was within the power of the Territorial Legislature to grant.

An assessment in Atchison made in ʳthe manner prescribed in its charter for improving streets, of one per cent. on the valuation of lots fronting the streets to be improved, *held* valid, and the sale of the lots therefor on default of payment, could not be restrained.

*Held* that the City of Atchison under Sec. 30 of its charter, had power to subscribe for Railroad Stock and to issue bonds therefor and pay the principal and interest thereon by a tax upon real and personal property within the limits of the city, (though the road were without)—the object of the

power being legitimate, to build up the material interests of the city, and the provision for submitting the tax to a vote does not invalidate the law' but *held* that the general tax for purposes including that, cannot exceed the charter limits of one per cent. of the assessed value of the real and personal property.

- The decision in the City of Leavenworth *v.* Norton, 1 Kan. Rep., 432, that municipal corporations take no power by implication, that their powers to tax cannot be implied merely from charter provisions allowing certain improvements to be made, but depend upon express authority to tax—affirmed.

A petition for an injunction to restrain the sale of lots for taxes, setting forth the interest of the plaintiffs in the land, describing it, that defendants by virtue of certain ordinances, giving them, have levied on the lots certain taxes for 1859, and are about to enforce the collection thereof by selling the said real estate to pay the same, specifying the amounts on each lot and the per cent. on the valuation, and for what purpose levied, with allegations showing their illegality, with an appropriate prayer, does not present sufficient grounds for an injunction,—the remedy at law being clear and undoubted. Decision of the Court below dissolving such injunction sustained.

A writ of error from a decision of the Court dissolving a temporary injunction theretofore issued in an action brought by plaintiff in error to restrain the collection of taxes on lots in the City of Atchison, levied under the charter and ordinances of that city. The case was submitted to the Court below on the following agreed fact:

That in the year A. D. 1859, the assessments for taxes were made for that year by the said Mayor and Councilmen of the City of Atchison, of the following amounts, and for the purposes following, to-wit: One per cent. on the assessed value of the real estate in said city for general city revenue, and one per cent. thereon for paying the interest on certain Railroad Bonds issued by said city under its charter, and also a tax assessment of one per cent. on the value of such real estate for the improvement of certain streets and alleys abutting thereon, in said city, according to the assessed value thereof, and the amount of said improvements was charged to said plaintiff's real estate abutting on said streets for the improvement of said streets and alleys.

It is therefore agreed that the corporate authorities of the said City of Atchison, did enter and pre-empt according to law the site of the said City of Atchison on the 27th day of March, A. D. 1858, and that a patent issued for said lands so pre-empted and entered, (of which plaintiffs real estate is a part,) but after said tax assessment aforesaid had been made. It is admitted that said plaintiffs paid said one per cent. of taxes assessed for general city revenue, but refused to pay the balance of said tax assessments, the said railroad tax and city grade tax for said year 1859, assessed against said plaintiffs' real estate, as described in their petition, in said cause, by said City of Atchison, being the subjects of controversy in this suit. It is admitted that said city and other defendants advertised plaintiffs' real estate for sale with other lots, and real estate upon which like tax assessments had not been duly paid, but before the commencement of this suit, plaintiffs hereby waive their right, if they have any, to collect back from said city the tax assessment by them paid as herein stated. Plaintiffs insist that said two unpaid assessments of a tax of one per cent. each are each of them unauthorized by said charter of said City of Atchison or any valid or legal or constitutional amendments thereto, or by any other legal, valid, constitutional law, and that any law appearing to authorize such assessment of taxes is illegal, invalid and unconstitutional, considering in connection therewith the first and paid assessments for general city revenue for the year 1859, and that plaintiffs are not liable for the same, nor is the aforesaid real estate.

The defendants insist that by the charter of said City of Atchison and the laws of the land, said assessments and every part thereof were legally and fully authorized, and that said charter and amendments thereto and the laws authorizing said assessments, are legal, valid and constitutional, and that said plaintiffs' lots and real estate are liable for said amounts charged thereto as set forth in plaintiffs'

petition. Hence the naked legal question of the power of said City of Atchison to make each or either of said several assessments which are the subjects of this controversy aforesaid, for the purposes aforesaid, and to enforce the collection thereof by sale of said lots and real estate, is the only question in this case, and that the Court in determining the question, may render such a judgment as may conform to the law of the case.

The case was argued in the Supreme Court by *W. P. Gambell*, for plaintiff in error, and by *G. W. Glick*, for defendant in error.

*W. P. Gambell*, submitted :

1st. The City of Atchison can not, under its charter, levy a tax in any one year of more than one per cent. for any purpose. *Private laws of* 1858, *p.* 172, *Sec.* 11.

2d. The assessment of the tax for interest on railroad bonds is void.

*a.* Because the question as to whether bonds should be issued, was submitted to a vote of the people. It was the vote of the people—an exercise of legislative power on their part, that authorizes these bonds to be issued. This we claim, the Legislature could not authorize the people to do. *Sedgwick on Constitutional law*, 164, *and cases cited*; *Thorne* v. *Cramer*, 15 *Barb.*, 112; *Bradly* v. *Baxter*, 15 *id.* 122; *Parker* v. *The Commonwealth*, 6 *Barr*, 507; *Barto* v. *Himrod*, 4 *Selden*, 483; 20 *Ohio*; *City of Patterson* v. *Society*, &c., 4 *Zabrisk*, 385.

*b.* The Legislature could not authorize the city to subscribe for stock in a railroad company. *Clark* v. *Rochester*, 5 *Ames' Law Rep.*, 289.

*c.* It does not appear that any railroad company had proposed to build a railroad leading to or from the City of Atchison, or opposite to said city on the bank of the Missouri in the State of Missouri. It was only upon these

58

things being done or proposed, that the city was authorized to issue bonds. *Charter, Sec.* 30.

*d.* It does not appear that the City Council by ordinance or otherwise, ever provided for subscribing for the stock or issuing the bonds. *See Sec.* 31, *Charter.*

*e.* At all events, the City Council could not subscribe for stock in, or issue bonds to, any railroad company outside of the Territory of Kansas.

*f.* This charter ought not to be so construed as to subject the property of the citizen to double taxation, unless such construction is clearly authorized by the very words of the act. *Blackwell on Tax Titles* 198; *Bank of Georgia* v. *Savannah, Dudley*, 132.

*g.* In this charter there is *no* authority for *levying* the tax to pay the interest on these bonds. Section 31 of the charter authorizes the city to issue her bonds for stock, or for the loan of money to pay for the same; but *nowhere* is the authority given to levy a tax in the manner shown by this record. If correct in this, the tax was for an illegal and unauthorized purpose, and is void. *Blackwell*, 194-195; *Lisbon* v. *Balt*, 1 *Foster*, 319; *Bussey* v. *Gillman*, 3 *Greenleaf*, 191; *Stetson* v. *Kempton*, 13 *Mass.*, 272.

3d. The tax for grading and improving the streets, is illegal. The City Council had no right, under the power to tax, to grade or improve the street and charge the expense thereof to the lots abutting or fronting on the street: such a charge is *not* a tax. It is taking private property for public uses, without just compensation. *Art.* 5, *Amend. to Const. U. S., The People* v. *Mayor &c. of Brooklyn*, 6 *Barb.*, 209; *City of Lexington* v. *McQuillan's heirs*, 9 *Dana*, 513; *Stanton* v. *Louisville*, 5 *id.* 28; *Sharp* v. *Shier*, 4 *Hill*, 76; *Taylor* v. *Porter* 4 *id.* 140; *People* v. *Maysr &c., Brooklyn*, 9 *Barb.*, 536; *Woodbridge* v. *Detroit*, 8 *Michigan*, 275.

4th. While the Legislature has the power to delegate to municipal corporations authority to levy and collect taxes

for specific purposes; yet such corporation has no power to levy any tax not *expressly* authorized by its act of incorporation. *Ashvill* v. *Means, 7 Iredell,* 406; *Blackwell on Tax, Title,* 196-7; *7 U. S. Dig.,* 456, *Sec.* 29.

5th. Statutes imposing taxes upon the citizen must be strictly construed, and the subject of taxation as well as the *amount* of the tax, must clearly appear. And where there is a fair doubt, the citizen must have the benefit of it. *Blackwell,* 197-198 *and cases cited; Dwarris on Stat.,* 749; *Sewell* v. *Jones,* 9 *Pick.,* 414; *Savannah* v. *Hartridge,* 8 *Ga.,* 30; *State* v. *Bank of Newberne,* 1 *Der. & Bot. Eq. R.,* 218; 12 *U. S. Dig.,* 145, *Secs.* 322-323; 1 *Foster,* 319.

6th. The City of Atchison possesses no power to levy and collect taxes upon property within its corporate limits, unless under an express grant from the Legislature. The *power* must be *unequivocally* delegated, or it is not given at all. Corporations take no powers by implication. The power is a limited one, and must be strictly construed and pursued. *Blackwell,* 523, *and cases cited; Moss* v. *Cincinnati,* 21 *Ohio,* 273; *Sharp* v. *Sheir,* 4 *Kill.,* 76; *Cheany* v. *Hoover,* 9 *B. Monroe,* 330; *Litch* v. *Pinckard,* 4 *Scam.,* 69; *Nillard* v. *Kellingworth,* 8 *Connecticut,* 247; *Starr* v. *Sealt,* 8 *id.* 480; *Hall* v. *Hanck et al.* 10 *id.* 514; *5 Ohio State,* 589.

7th. The plaintiffs' showing themselves the owners of this property, and that the defendants are about to sell it for the non-payment of taxes ,the burden of proof is on the defendants to show the right to sell. *Blackwell,* 84-112 *included.*

8th. If any one of the several taxes levied, is illegal, and the residue legal, the whole proceeding, so far as selling, or attempting to sell the land is concerned, is absolutely void.

Before the plaintiffs' land can be sold, it must be liable for all the taxes for which it is attempted to sell it. It is impossible to separate and distinguish these taxes so that the acts of the officer in making the sale shall be in part

lawful, and in part acts of trespass. The officer sells, or attempts to sell, *for the whole tax*. *Blackwell*, 192, *and cases cited*; *Elwell* v. *Shaw*, 1 *Greenl.*, 335; *Torry* v. *Millburd*, 21 *Pick.*, 70; *Bangs* v. *Snow*, 1 *Mass.*, 188-9; *Stetson* v. *Kempton*, 13 *id.* 283; *Drew* v. *Davis*, 10 *Vt.* 506; *Alvord* v. *Collins*, 20 *Pick.*, 418; *Kemper* v. *McClelland*, 19 *Ohio*, 324.

9th. But there is no authority given to the corporation by the charter by virtue of which these lands can be *sold* to pay delinquent taxes, and unless the power to *sell* has been *expressly* granted in the charter, this summary proceeding is illegal. When the taxes were assessed, if assessed legally, they became *debts* due to the corporation, which if not paid, must be recovered in an action brought by the corporation in the Courts against the delinquent. *Blackwell*, 524-5 *and cases cited*; *Bergen* v. *Clarkson, Halstead*, 352; *Mayor* v. *Howard*, 6 *Harr. & Johns.*, 383; *Dugan* v. *Mayor &c.*, 1 *Gill. and Johns.*, 499; *Doe* v. *Chrenn*, 1 *Blackf'd*, 336; *Fitch* v. *Pinckard*, 4 *Scam.*, 69; *Mack* v. *Jones*, 1 *Foster*, 393. In the charters of other cities, the power is expressly given. *See Amended Charter of Leavenworth of* 1859, *Sec.* 20 *of Art.* 8, *Secs.* 12-3.

*Otis and Glick*, for defendants in error, submitted:

Are lands subject to taxation before the government issues a patent therefor? When land is entered, it is treated as the property of the person entering it. It can be mortgaged, sold on execution, leased for a term of years, and conveyed in fee. The attributes thus attaching to land, make it the absolute property of the person purchasing it from the government, with this single limitation reserved to the government, to set aside a sale of lands for fraud of the purchaser, or mistake. The naked legal title stands in the government, but this signifies nothing when the equitable title is in the vendee. He takes possession; has the right to the possession; and the right to demand the legal

title; and holds it against the world, even against the government, except the vendor got title by fraud or mistake. *Carroll* v. *Safford*, 3 *How.*, *S. C.*, *U. S. Rep.*, *pp.* 460-4.

This case meets any objection that might be raised as to the construction of our Organic Act, by which the Territory is inhibited from taxing the lands of the United States. It shows that any argument against the right to tax lands after entry and before the issuance of the patent, is untenable. The law only inquires whether the land has been bought and paid for. If it has, it holds that it is subject to taxation. The law does not inquire whether the claimant has the evidence of title.

The same principle that holds lands subject to sale on execution, before the issuance of the patent held them subject to taxation under the same circumstances. *Carroll* v. *Safford*, 3 *How.*, 441; *Levi* v. *Thompson*, 4 *id.* 17; *Savender* v. *Smith*, 3 *Green* (*Iowa*) *Rep.*, 350; *Carroll* v. *Perry*, 4 *McLean's Rep.* 25; *Brockway et al.* v. *Doe Demise of August*, 5 *Black.*, 110.

Because it has been held by the Supreme Court of the United States in the cases of *Bagnall* v. *Broderick*, 13 Pet. 436, and *Wilcox* v. *Jackson*, 13 id. 498, *et seq.*, that the technical legal titles to lands was in the United States till the issuance of the patent, it has been claimed that therefore they were not subject to taxation. But this position has been held to be untenable by the case of *Levi* v. *Thompson* cited *supra*. On these authorities I submit this branch of the case.

Have the corporate authorities of the City of Atchison power under the charter to levy an assessment on lots in said city abutting on streets and alleys, for their improvement, in addition to the one per cent. authorized for general revenue purposes?

Section XI. of the charter provides: " That the Mayor and Board of Councilmen shall have power, by ordinance, * * * to levy and collect a special tax on the holders of the lots on any street, lane, alley or avenue, according

to their respective fronts owned by them, for the purpose of grading and improving the same," &c.

By Section IV. of the act to amend the city charter, approved Feb. 11th, 1859, passed long before the assessment was made in this case, it is provided that "The Mayor and Council shall be authorized to levy tax upon all real estate, lot or lots lying upon any street or alley, for grading, paving, or macadamizing thereof, either by the foot front, or the assessed value thereof."

This amendment gives the city full and plenary power to levy a tax, to open or improve streets. If it was not granted so broadly as it is, the power to open streets would also imply the power to improve so as to make useful the street opened. If this was not so, why open a street? The power to open streets and alleys carries with it those incidents that are necessary and needful in the carrying into effect the power granted.

The word "tax" as used in the connection quoted in the 11th section of the charter, and in the 4th section of the amendment quoted above, means "*assessment.*" The charter and the amendment refer to this as "*a special tax.*" It is treated and called by the charter a special tax. It relates to special purposes—is not uniform in its operation—operating on particular lots, and in particular localities—certain lots in certain streets. It is not included in the "one per centum" for general revenue purposes, authorized by the charter. It is outside of and independent of that, just as the poll tax, dog tax, &c., is. Such a tax could not be uniform; and it is not the policy of the government, either municipal or state, to tax one part of the community for the improvement of the property of others. The word "tax" has a definite and fixed meaning, and is applied to a certain class of contributions. The word "*assessment*" differs in its signification radically from the word "*tax.*"

*a.* A "tax" is defined to be, "a rate or sum of money assessed on the property of a citizen by government for the use of the nation or State." *Webster.*

"Taxes are contributions imposed by government upon individuals for the use and service of the State." *Story on the Cons. Sec. 472, Abr.*

"Taxation exacts money or services from individuals as and for their respective shares of contribution to any public burthen."

"Taxation operates upon a community or upon a class of persons in a community, and by some rule of apportionment." *The People* v. *The Mayor of Brooklyn*, 4 *Com., R.* 422; *Schoville* v. *The City of Cleveland*, 1 *O. S. R.*, 126.

The power to levy and collect taxes is similar to the exercise of the right of "*eminent domain*" as incident to all governments, and the exercise of which is necessary to sustain all governments. The exercise of this right is equally potent in the case of taxation and assessment. In fact, its application in both cases is the same—the difference is only in the application of the right. The effect is partly the same.

*b.* "Assessments are laid for local purposes upon local objects, and are recompensed by local benefits or improvements." 1 *Handy*, 464; 8 *O. S. R.*, 135, *et seq.*

Assessments are charges laid upon property for particular purposes, such as improvements, grading, &c.

The difference between "taxes" and assessments is, that the former are levied for *general public* purposes upon all alike; and are compensated for by the equal protection of government afforded to all; the latter are laid for local purposes, upon local objects, and are compensated in local benefits and improvements. *Ridenour* v. *Saffin*, 1 *Handy*, 464.

An assessment is undoubtedly a tax, but it implies something more; it implies a tax of a particular kind, predicated upon the principle of equivalents, or benefits, which

are peculiar to the persons or property charged therewith, and which are said to be assessed or appraised, according to the measure or proportion of such equivalents. Whereas a simple *tax* is imposed for the purpose of supporting the government generally, without reference to any special advantage which may be supposed to accrue to the persons taxed. Taxes must be levied without discrimination, equally upon the subjects of property, whilst assessments are only *levied* upon lands, or some other specific property the subject of the supposed benefits, to repay which the assessment is made.

*c.* This distinction between taxes and assessments has become a fixed principle in the land. 1 *Handy*, 475 ; *The Mayor of New York in the matter of improving Nassau street*, 11 *Johns*, 77 ; *Hill vs. Higdon*, 5 *O. S. R.*, 243 ; *The People* v. *The Mayor of Brooklyn*, 4 *Com. R.*, 440 ; *Scoville* v. *The City of Cleveland*, 1 *O. S. R.*, 226.

In the case of the City of Peoria *v.* Kidder, 21 Ill., C. R., 351,) the Court say that an assessment is not a tax in the proper meaning of that term, and that assessments are constitutional.

By the application of the rules laid down by these authorities to the terms "special tax" as used in the 11th section of the charter, and "*tax*" as used in the 4th section of amendments, it becomes perfectly clear that these terms in their connection in the charter and amendments, when considered with reference to their subject matter and proposed object, prove conclusively that their true meaning, as used, is "*assessments.*" The Legislature so intended to use these terms. Though the Legislature has used the word "tax," yet the law fixes its meaning by its context and subject matter, to which it refers and applies, and the objects proposed to be accomplished by its use as a term, and using it to define a particular object to which the law has also given a name. By using the term. "assessment" instead of tax," the meaning is preserved ; the object of the law

becomes more apparent and its meaning more clear, and the real and manifest intention of the Legislature clearly appears.

The term "tax" as used in the first clause of the 11th section of the charter, has reference to other matters—it refers to a tax proper. It is there used in reference to a revenue tax. In that connection it means the general revenue raised for the support of the city government.

The punctuation of this sentence will aid the Court in giving it the proper construction.

If the city has the power to levy only one per centum of tax, what does the charter mean when it says the corporate authorities can levy and collect a poll tax, a dog tax and a special tax? If the dog tax and poll tax are not included in the one per centum, by what system of reasoning can "a special tax" be included in it? They are all included or they are all excluded.

The fourth section of the amendment referred to also proves that the "special tax" is not included in this one per cent. tax.

*d.* The right to make these assessments is a power that the Legislature can confer on cities and villages. This power has been exercised from time immemorial. Under this power towns and cities have been laid out, streets and alleys laid off, opened, improved and lighted at nights, and no Court has yet even intimated that the Legislature could not confer such power. It is the legitimate exercise of the right of "*eminent domain*," without which no government could long exist.

The exercise of this right does not imply the right to take private property without compensation. This is not done in making improvements. The owner gets his pay in the increased value of his property, in the benefits conferred by the improvement of the real estate surrounding his. The principle of equivalents is fully vindicated and applied. *Reeves* v. *The Treasurer of Wood Co.*, 8 *O. S. R.*, 333;

*The People* v. *The Mayor of Brooklyn*, 4 *Com. R.*, 440; *Hill* v. *Higdon*, 5 *O. S. R.*, 243; *Scoville* v. *The City of Cleveland*, 1 *O. S. R.*, 127; *Bonsal* v. *Lebonon*, 19 *O. R.*, 418; *The Matter of the Mayor of New York*, 11 *Johns*, 77; *Ridenour* v. *Caffin*, 1 *Handy*, 464.

The law in such cases only applies the doctrine of the maxim, " *Qui sentit commodum debit et onus.*" *Broom's Legal Maxims*, 553.

" He who experiences the benefit ought also to feel the burden."

The Constitution of the United States has no application to the subject, even was this exercise of power the taxing of private property without compensation or without the consent of the owner. The fifth amendment of the constitution is a limitation on the power of the government of the United States only, and does not operate as a limitation on the power of a State. *Lee* v. *Tillotson*, 12 *Wend.*, 337; *John Barron* v. *The City of Baltimore*, 7 *Pet. Rep.*, 243-250.

But whether or not the improvement of streets in cities is the taking of private property without compensation, yet I claim that municipal corporations have this power. In this case the Legislature has conferred this power. That the right of eminent domain may be conferred, not only on municipal corporations, but private, cannot at this day be questioned without upsetting the legislation of a half a century, and the repeated adjudications of our own and sister States. 14 *O. R.*, 173; 2 *Kent*, 338-339, *and note a.*

Private property is daily taken by private corporations for the tracks of railroads, highways, streets and canals. The appropriation of private property for these objects has become a fixed principle in our jurisprudence. *Broom's Legal Maxims*, 729; 5 *Blackf'd.*, 165; 8 *Black*, 196; *Thompson* v. *Tolmie*, 2 *Pet.*, 157-163; *Kupfer* v. *Crowell*, 1 *Kans. R.*, 75; 1 *Green'f.*, 19; *Gould's Pl.*, chap. 10, Sec. 14.

In this case the streets are improved, the money expended for the improvement of the plaintiff's property.

It is, then, no more than simple justice that their property should contribute its full share to pay back to the city the money expended. (19 *O. R.*, 418.) He who demands justice should come into Court with clean hands. He who asks equity must do equity. *Story's Eng. Jurisp.*, *Sec.* 640; *McDonald* v. *Nelson*, 2 *Comp. R.*, 139; 4 *Han.*, 531; 4 *id.* 4, 143.

*e.* These plaintiffs stood by and saw the work progress, the streets improved, the money expended, and now ask that they may have the use of the money expended by the city for the improvement of their property—have its value enhanced—made valuable—rendered saleable—and not pay their just share of the expenses. They do not come into Court with clean hands. If they were not willing to pay their just share for the improvement of the streets, they should have interposed their objections when the work was commenced. It is not rendering a "*quid pro quo.*" It is like a party buying an article and then refusing to pay for it. I think by the law they are bound to pay for these improvements. I will only say further on this part of the subject that the power to tax, carries with it the power to collect the tax, by sale or otherwise. *Douglas* v. *Dangerfield*, 10 *O. R.*, 156; *Carroll* v. *Safford*, 4 *Wheaton*, 441-63.

III. Has the Legislature the power to authorize municipal corporations to levy taxes to aid in building railroads and other public improvements?

The use of railroads as a means of speedy, certain and safe travel and transportation, has become a fixed necessity of our country. The decisions of the State Courts, sustained by the Supreme Court of the United States, have been uniform in sustaining such legislation. The decisions of Iowa on this subject, I admit, have not been uniform, but the weight and number of our decisions have been uniform

in favor of the exercise of the power to authorize munici-
pal aid in making improvements of a public nature. The
conflicting opinion does not place the objection on constitu-
tional ground. The power to organize municipal corpora-
tions I take as a conceded right. Municipal corporations
can take such powers as are conferred, and exercise them.
The Legislature can confer all power on such corporations
not specially prohibited by constitutional or organic inhibi-
tion. The extent of the power conferred is thus a political
question to be exercised in the discretion of the Legisla-
ture, and being discretionary, it cannot be controlled except
by constitutional or organic limitation. Congress has ex-
ercised this power in chartering banks, railroad companies
and municipal corporations. The exercise of this power
has been declared constitutional in the incorporation of the
U. S. Bank. No one has questioned the constitutionality
of the Pacific Railroad Bill. Congress can and has au-
thorized a municipal corporation to vend lottery tickets,
and the Supreme Court of the United States has decided
that the corporation was liable to pay the prizes drawn.
*Clark* v. *Corporation of Washington*, 12 *Wheat.*, 40 ; *Mc-
Cullough* v. *Maryland*, 4 *id.* 316.

Hence we see that other powers may be given to a mu-
nicipal corporation than the simple exercise of police regu-
lations.

It may be inexpedient or impolitic to grant extensive or
extraordinary powers to municipal corporations, but these
are simply questions of expediency, and have nothing to
do with the constitutionality of such powers. The remedy
is with the Legislature, and not the Courts—the Courts only
construe the laws—they do not pass or repeal them.

IV. *a.* I admit that the powers of government should
not be extended by far-fetched implication ; but while we
are thus careful of any usurpations, we should be equally
careful not to defeat the purpose of the laws by narrow and
unreasonable constructions. The laws should have a liberal

and fair construction, one that will develope and give force to the legislative intention, so that it is not in conflict with the organic law. It is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered void. The opposition between the constitution and the laws should be such that the judge feels a clear and strong conviction of their incompatibility with each other. *Fletcher* v. *Pick.*, 8 *Cranch R.*, 87; *Adams* v. *Howe*, 8 *Mass. Rep.*, 345; *Wellington* v. *Petitioners, &c.*, 16 *Pick.*, 95; *C. W. Z. R. R. Co.* v. *Coms. of Clinton Co.*, 1 *O. S. R.*, 77; *City of Louisville* v. *Hiatt*, 2 *Mon.*, 178; 9 *Dana*, 514.

In the case of the Cincinnati, Wilmington and Zanesville Railroad Co. *v.* Commissioners of Clinton County, in sustaining such legislation, the Court say: "Does the object proposed by this law, and the method adopted for its accomplishment, fall within the legitimate scope of legislative authority? Its object and effect may be defined to be—an authority to the County of Clinton to aid in the construction of a railroad passing through it by subscribing to the stock. We shall take as a predicate upon which to found all reason upon this subject, that the State may lawfully construct roads, canals, and other descriptions of internal improvements, calculated to facilitate the social and business intercourse of the people, and to develope its resources and add to its strength and security."

\*          \*          \*          \*          \*          \*

"It is true that in early times only wagon and turnpike roads were constructed; but it would be strange imbecility to fasten upon the government, to deny it, in the attainment of the same ends, by the use of such improvements as science and discovery have brought within its reach."

"In accomplishing the lawful purposes of legislation, it must be admitted that the choice of means adapted to the ends proposed, and not prohibited by the constitution, must be left exclusively to the discretion of the Legislature."    \*

* * It must be admitted that the incorporation of private companies for the construction of works of a public character, is one of the lawful means that "may be employed."

This right has never been questioned, except as to the terms of compensation (for private property taken.)

If, then, the Legislature may lawfully embark the State in the construction of these works, and especially if it may authorize private companies to construct them, and they still retain their public character, it would seem to follow, for much stronger reasons, that it might authorize the counties to construct those of a local character, having especial relation to their business and interests. These political organizations are created for no private object. They are, as we have seen, public instrumentalities, invested with such local, administrative functions, as the Legislature sees fit, from time to time, to confer upon them, and having the power to provide for the construction of such improvements, directly and absolutely, it is. most unquestionable that it has the power to attain the same end indirectly and conditionally through these subordinate agencies. 1 O. S. R., 94-5-6.

The State might construct or authorize the counties to construct these works entire; or it might create corporations to do it entire. This would be adopting different but lawful means to effect the same lawful object. If, then either might do the whole is it not too obvious for doubt, as a question of power, that each may be authorized to do a part? Does not the whole, necessarily include the parts, or can the exercise of a power be impeached because it is not exercised to the full extent authorized? Cannot different but harmonious agencies be employed by the Legislature, at its discretion, to effect the same object? We think they may. It is true that the whole pecuniary interest of the work does not belong to the public when completed, But it belongs to them in exact proportion to the amount

they have contributed to its construction, which is all that justice requires and all they have seen fit to exact.

In the decision of this cause the Court say further, that: " While this question seems to us *clear on principle,* we find ourselves confirmed in the conclusion to which we have arrived, by the *unanimous* opinion of all the State Courts in which this question has arisen." 1 *O. S. R.,* 97.

The Court then quotes quite a number of decisions showing that their conclusions of the law have been sustained by the adjudications of the Courts. They cite *Bridgeport* v. *The Housatonic Railroad,* 15 *Conn. R.,* 475 ; *the Commonwealth* v. *McWilliams,* 11 *Penn. R.,* 61 ; *Goodwin* v. *Crump, Leigh, Virg. Sup. Court Rep.,* 120 ; *Nicol* v. *Mayor of Nashville,* 9 *Humphrey Tenn. Sup. Ct. Rep.,* 252 ; *Talbott* v. *Dent,* 9 *B. Mon.,* 526 ; *Chesney* v. *Hoover, B. Mon.,* 250.

But the leading case from Kentucky is Slack *v.* the Maysville and Lexington Railroad Company, (13 B. Mon., 1,) in which the decisions on this question are ably reviewed, and the right of the State to authorize municipal corporations to tax themselves to aid in building railroads is maintained. This case was decided in 1851.

In the case of Chesney *v.* Hoover, (9 B. Mon. 250,) the Court held that—

I.   The Legislature have the constitutional power to confer taxing power upon local corporations, for their government and security.

II.   All the lands of the commonwealth are held subject to the general powers of the Legislature to tax them, either for general purposes of government, or for *local* purposes within localities in which they are situated.

In the case of Dent *v.* Dent, (9 B. Mon., 526,) in pronouncing the judgment of the Court, Chief Justice Marshall, after reviewing the authorities, remarks :

" These cases decide what must, we think, be conceded, that in order to characterize a particular work or expendi-

ture as being within the legitimate local purposes of a local municipal corporation, it is not necessary that the work or expenditure should be confined to the local limits of the corporation; but that in the case of a road or a canal leading to or near the city, and obviously tending to *facilitate its commerce* and *secure* or *increase* its commercial business and prosperity, as well as the case of an aqueduct or sewer, tending to promote the health and comfort of the city, it is sufficient that the object to be accomplished be so connected with the city and *its interests*, as to conduce obviously and in a special manner to their prosperity and advancement."

The same question has been before the highest Courts of the State of New York, in all its various phases, but with the same results, and they holding that it is a legitimate ex ercise of power to authorize municipal corporations, by local taxation to aid in building railroads and other local improvements. In the case of Clark *v.* The City of Rochester, the cases are ably reviewed and the Court among others arrives at the following conclusions:

IV. That the power to authorize the construction of works of internal improvement, and to provide for their construction by the officers or agents of the State, rests with, and pertains to the Legislature, to be exercised within its exclusive discretion.

V. That such may be constructed by general taxation; in case of local works by local taxation; or the State may aid in their construction by becoming a stockholder in private corporations; or authorize *municipal corporations to become such stockholders for such purpose.*

VI. That *railroads are public works*, and may be constructed by the State, *or* by corporations, and lands taken for their use are taken for the *public use*, and may be so taken on payment of a just compensation.

VII. "That the Legislature may authorize, and is the exclusive judge in respect to what works are for the public

benefit, and in regard to the expediency of constructing such works, and as to the mode of their construction, whether by State or by private or *municipal corporations, in whole or in part.*"

VIII. "That the Legislature may authorize *municipal corporations to subscribe to the stock of a railroad company,* with the *consent and approval of a majority of the corporation duly ascertained.*"

XI. Finally. The acts of the city of Rochester, in subscribing for the stock of the Genesee Valley Railroad Company, and issuing the bonds of the city to pay for such stock, as stated in the cause, were legal and valids acts. 4 *Howard Prac. R.* 193, 200, 201.

This case is precisely similar to the one before the Court. It settles this case in favor of the defendants in error, on the point now under discussion, and also settles the next point made by the defendants, in their favor. The Court will notice that this reverses the decision made in this case at *nisi prius*, reported in the American Law Register, 289, relied on by the plaintiffs. It also explains the case of Barto *v.* Himrod, (4 Seldon, 483,) the force of which will appear in another part of this argument.

"The subscription to the stock of the railroad, by the city, and the issuance of the city bonds to pay for the same, does undoubtedly, as the learned judge (*at nisi prius*) holds, involve the necessity of levying a *tax to pay principal* and interest, and if such tax cannot lawfully be imposed, that act, or section thereof, in question, must be invalid."

But the right of the Legislature to authorize a local tax, it seems to us, cannot be seriously controverted. *Thomas v. Leland,* 24 *Wend.,* 65 ; *Mayor of New York* v. *Livingston,* 8 *Wend.,* 110 ; *The People* v. *The Mayor of Brooklyn,* 4 *Com.,* 436 ; 3 *Ker.,* 144.

That railroads are public improvements which the State may construct itself, or authorize to be constructed by cor-

60

porations; that the State may be a stockholder in such a corporation, and may also authorize *municipal corporations* to become stockholders therein, *and may levy taxes to pay interest and principal* upon such stock, and authorize *municipal corporations* to levy a local tax for that purpose, is also fully established by the following cases in other States:

*Sharpless* v. *The Mayor of Philadelphia*, 21 *Penn. State Rep.*, 9 *Harris*, 148; *C. W. & Z. R. R. Co.* v. *Clinton Co.*, 1 *O. S. R.*, 77 *et seq.*; *Bridgeport* v. *Housatonic R.R.*, 15 *Conn. R.*, 475; *Goodwin* v. *Crump*, 8 *Leigh Vir. Rep.*, 120; *Nicol* v. *The Mayor of Nashville*, 9 *Hump. Tenn. Rep.*, 352; *Talbot* v. *Dent*, 9 *B. Mon.*, 526; *Slack* v. *The Maysville and Lexington Railroad Co., supra*; *Chesney* v. *Howe*, 9 *B. Mon.*, 250.

The same conclusions have been adopted by the Supreme Courts of Missouri, Iowa and Wisconsin.

The case of City of St. Louis and County *v.* J. H. Alexander, is the leading case in Missouri. This case, perhaps is more directly in point than any other case as regards the object for which the money was raised. 23 *Mo. Rep.*, 483, *et seq.*

In this connection I desire to call the attention of the Court to an elaborate review of the authorities, and the opinion of Chief Justice Hitchcock, announced in the case of Griffith *v.* The Commissioners of Crawford County, (*See Appendix* 20 *O. R.*,) in which he sustains by incontrovertible logic and law, the legality of municipal subscriptions to railroad companies. His argument disposes of the whole question; and his conclusions are irresistible and unanswerable on the questions arising in this case. *Arny* v. *The Mayor and Aldermen of Alleghany City*, (*decided by the Supreme Court of the U. S., reported in the Amer. L. Reg.*, Vol. 9, 338); *Knox County, Ind.* v. *Wallace*, 21 *How.*, 539; *Zabriskie* v. *C. C. and C. R. R. Co.*, 23 *How.*, 381; *Commissioners of Knox Co.* v. *Wallace*, 21 *How.*, 546.

The Supreme Court of Iowa has recognized the constitutionality of municipal and county subscriptions to aid in building railroads in the following cases : *McMillan* v. *Lee County Judge*, 6 *Iowa R.*, 391; *Dubuque and Pacific R. R. Co.*, v. *Dubuque County*, 4 *G. Green*, (*Iowa*) *R.*, 1; *The State* v. *Bissell*, 4 *Green*, 328 ; *Clap* v. *Cedar*, *County*, 5 *Iowa R.*, 15 ; *Ring* v. *Johnson County*, 6 *Iowa*, 391.

In the case of Stokes *et al.* v. The County of Scott, the Supreme Court of Iowa gave a different opinion, but based the opinion on the fact, as the Court claimed, of there being no law of the State authorizing the County of Scott to issue railroad bonds. In this view these cases do not militate.

In the case of Rice *v.* Foster, 4 Harrington Delaware Rep., 479, the Supreme Court of Delaware follows the uniform current of decisions, and sustains my view of the law in this case.

The case of Clark *v.* City of Janesville, decided by the Supreme Court of Wisconsin, reported in 10 Wis. Rep., 136, same questions discussed, and the validity of municipal subscriptions to railroads sustained. *See also State ex rel. Deane* v. *The City of Madison*, 7 *Wis. Rep.*, 688; *Vermont Central Railroad Co.* v. *Clages*, 21 *Ver. Rep.* 30.

*b.* I do not know that it will be claimed that the adoption of the constitution of our State has any bearing on this subject. Sec. 5 of Art. 12 of our constitution recognizes the right to authorize municipal corporations to levy taxes, and make assessments, with the simple reservation to the Legislature, to limit them as to the extent of the exercise of this power.

This clause of our constitution is borrowed from Ohio, and is construed and applied by the Supreme Court of that State in the case of Cass *v.* Dillon, (2 O. S. R., 607, *et seq.*,) in which it is shown that nothing can be drawn from the constitution to aid the plaintiffs in error in this action. It sustains the position of the defendants, and is a constitu-

tional affirmance of the principle for which I contend. The constitution is prospective as to the subjects that incidentally arise in this cause, and which are affected by it. In the case of the Citizens' Bank of Steubenville *v.* Wright, Auditor of State, (6 O. R., 318,) this whole subject is ably reviewed, and the constitutional questions disposed of, and the Court holds the constitution to be prospective in its operation, unless the contrary affirmatively appears.

The charter of the City of Atchison was granted by the late Territorial Legislature of Kansas, as well as the amendments, and it may be claimed that it must be construed by the Organic Act. I shall not object to this claim. It is entirely consistent with that act, as construed and applied, as the legislation under it abundantly proves.

The 24th section of that act provides that "the legislative power of the Territory shall extend to all rightful subjects of legislation, consistent with the Constitution of the United States and the provisions of the Organic Act."

I think it will be hard to find any conflict between the city charter and these instruments. Such legislation is not prohibited. It is a rightful subject of legislation, as the legislation of our own and other States, of a similar character, abundantly proves. Such legislation is in accordance with the Constitution of the United States, and it is so held. (*See cases cited supra.*) There is nothing in either of these instruments limiting the power of the Legislature on this subject, and not being inconsistent it is authorized, and is therefore rightful.

V. I now come to the fourth proposition in this case. if the 30th section of the charter of the City of Atchison is valid, then I have, I think, made a clear case against the plaintiff.

The 30th section is as follows :

"That the City of Atchison, as hereby incorporated, shall have power to subscribe for stock in any railroad company proposing to build a railroad leading to or from said

City of Atchison, in Kansas Territory, or opposite to said city in the State of Missouri, *Provided*, That the stock subscribed for and actually paid in shall not at any time exceed two hundred thousand dollars; and provided also that said city shall not subscribe for more than one hundred thousand dollars of such stock in any one year; provided also that said city shall not subscribe for any such stock, at any time, until a proposition for thus subscribing shall have been submitted to a vote of the qualified voters in said city; and if a majority of the votes polled approve of the proposition, the stock may be subscribed, otherwise it shall not be made.

Section 39 enacts "That all parts of acts, inconsistent with this act are hereby repealed. This act to take effect and be in force from and after its passage."

Approved Feb. 12, 1858.

The Court will notice that it is the 39th section that puts the law in force, and not the 30th section—nor is it the vote authorized by the 30th section that puts it in force.

*q.* The question arises, whether the fact that the vote of the corporators or people authorized by the 30th section of the charter vitiates the acts done under and by virtue of it? The 30th section is a law, independent of the vote. It only suspends action under it till the will of the corporators is expressed or ascertained. The charter was passed into a law by the Legislature. Its going into effect did not depend on any contingency. The bill was not submitted, to become a law on receiving a majority vote. Nor was the law submitted to the voters for their rejection or approval. That was in force already.

The Legislature, when it conferred corporate powers on the city, had the power to fix and regulate the manner of exercising the power conferred, and also to make its exercise depend on contingencies provided for by the charter.

I do not understand that exercising a discretion under a law puts the law in force. If the charter could authorize

ten corporators, by calling them Mayor and Councilmen, to subscribe stock to a railroad company, it can authorize any other number to do so, or require the assent of all the corporators, or of a majority of them.   It is not a delegation of legislative power to pass a law to authorize a subscription to a railroad company, by a municipal corporation, and make it depend on the assent of the corporators ascertained by a vote of the corporators, but is simply a legitimate exercise of conditional legislation, entirely within the discretion of the Legislature.

This charter is not even conditional legislation.   There are no conditional provisions in the charter.   The Legislature has passed it on its own authority, and it stands as a law from the date of its passage, and in no respect subject to approval or rejection by the people.

This city charter contains various provisions, some of which depend on certain acts to give them effect—on the exercise of certain things authorized under certain circumstances.   The issuing of bonds or the subscribing stock depending on the assent of the people.   This is acting under the law, according to the terms of the law.   *But the law* is dependent on no contingency—on no option or assent from without.   Whether the contingency happen or not, whether the vote be taken or not, whether the assent to subscribe be given or not, the charter of the City of Atchison, including the 30th section, is a perfect and complete law.

I do not say that even the legislation I have instanced would be void, but I do say that it is only such an act as could give rise to the objection urged, and I further assert that no authority can be found in favor of this objection, except to an act which is to become a law only on receiving a majority vote in its favor, or one that is to become a law only on condition that some third person outside of the legislative department assent to its becoming a law.   There is a vast difference in the cases supposed and the case be-

fore the Court arising under the 30th section of the charter of the City of Atchison.

I further assert, as a well-established proposition of law, that a law may be made to depend on a contingency—may take effect on a future day—or upon the happening of a future or contingent event, or be enforced as a law on the happening of a certain event or upon a condition expressed in the law itself.

The power to make a law is one thing, an authority or discretion to be exercised under the law is an entirely different thing.

*b.* Having presented this question on principle, I now propose to present the question on authority, and refer to *Clark* v. *The City of Rochester*, 14 *How. Pr. Rep.*, 193; *Rice* v. *Foster*, 4 *Har.* 479; *City of St. Louis et al.* v. *Alexander et al.*, 23 *Mo. R.*, 483; *C. W. & Z. R. R. Co.*, v. *The Commissioners of Clinton County*, 1 *O. S. R.*, 77; *State on relation of Caldwell* v. *Reynolds*, 5 *Gil. R.*, 1; *Talbot* v. *Dent*, 9 *B. Mon.* 526; *Slack* v. *The Marysville & Lexington R. R. Co.*, 13 *id.* 1; *Knox County* v. *Aspinwall*, 21 *How.*, 539; *Knox County* v. *Wallace*, 21 *id.* 546; *Cass* v. *Dillon*, 2 *O. S. R.*, 607; *Griffith* v. *Coms. of Crawford County*, 20 *O. R. Appendix*; *Dubuque County* v. *The Dubuque & Pacific R. R. Co.*, 4 *Green R.*, 1; 6 *Iowa*, 304, 391; *Loomis* v. *Spencer*, 1 *O. S. R.*, 153; 21 *Ver. R.*, 30; *Clark* v. *The City of Janesville*, 10 *Wis.*, 136.

In conclusion of this subject, I claim that the vote authorized by the 30th section of the charter of the City of Atchison, is constitutional, and taken for the purpose of determining whether it was expedient for the City of Atchison to subscribe stock to aid in the construction of a railroad, and not to decide that the 30th section of the charter should or should not become a law.

Having adduced from the decisions the law of this case, or rather ascertained from the adjudicated cases, the true construction to be placed on the powers granted by the

charter of the City of Atchison, I am authorized to claim that the railroad bonds issued are valid and binding on the city. If I am right, then, in my conclusion, the only question is whether the city shall be permitted to pay the interest due on its bonds issued under the power granted by the charter, and if so shall it raise the money by taxation for that purpose. The city having issued bonds, bearing interest as provided by its charter, (31st section,) has levied the tax annually to pay the interest "nominated" by her "bond."

The law tells us that all corporations have all the incidental powers necessary for carrying out the granted powers. That the granted powers have to use the incidental to apply and make effective and useful the granted powers. The right to issue bonds is a positive grant, but before that positive grant can be effective, the incidental powers must be called into play, to fix the amount of each bond, its form, its negotiability, time and place of payment, the rate of interest, the manner of paying that interest, and the principal when that becomes due.

The charter must be construed in such a manner as will answer the intention of the Legislature, and all its parts must be construed so as to make them subservient to and in harmony with the objects proposed or granted by it. If this is the true construction to be placed on the city charter, then what becomes of the plaintiffs' case? If the power to issue the bonds is conceded, the power to make them draw interest annually is certainly granted as an incident, and if the interest is due annually, has not the city power under its charter to make the bond valuable, by providing for its payment, and when this interest becomes due and becomes a debt, cannot the city make provision for paying that debt or make provision for paying it when it becomes due?

In the case of Clark v. The City of Rochester, the Court made use of the following language:

" That railroads are public improvements which the State may construct itself, or authorize to be constructed by corporations; that the State may be a stockholder in such corporation, and may also authorize municipal corporations to become stockholders therein, and levy taxes to pay interest and principal upon such stock, and authorize municipal corporations to levy a local tax for that purpose, is fully sustained by the following authorities." 24 *Harris*, 148; 1 *O. R.*, 77; 15 *Conn.*, 475; 8 *Leigh Vir.*, 120. 9 *Humph.*, 352.

The Court also (page 214, 14 How., Pr. Rep.) say, " The subscription to the stock of the railroad by the city, and issuing of the city bonds to pay for the same, undoubtedly involves the necessity of levying a tax to pay principal and interest."

But change the phases of the question. Suppose the city failed to pay, could not the bondolder put his claim for interest in judgment, and then would not the city be compelled to pay—to collect the money for that purpose by taxation?

This levy of a tax to pay the interest on all the bonds issued, is only carrying out the general grant, by enforcing the incidental powers that revolve around the general powers, and apply them and make them effective.

I wish also to call the attention of the Court to the amendments to the city charter, and though their construction does not come directly in review in this case, yet the questions involved are of great importance to the city in her corporate capacity, as well as to the citizens, therefore it may not be amiss for the Court, for the purpose of saving litigation, and quieting rights, to pass also upon those amendments, and construe them with the 30th and 31st sections of the charter, in settling this case. By taking these amendments as part of the city charter, I think, if the construction put on section 30 by me is correct, the

61

Court must of necessity sanction the tax levied to pay interest on the railroad bonds. The tax in this case was levied in 1859, but as this is an annual levy and all the taxes levied since 1859 are under the amendments, it may be as well to fix the liability of the city to pay this annual interest as well as the liability of the property holders to pay their railroad tax. It cannot affect the plaintiffs to thus construe this charter and amendments. If they are liable under the charter and the amendments, and are not under the charter originally, it cannot prejudice them, as this tax for 1859 is carried into the tax of 1860, and they then would have to pay it as a tax of 1860. These amendments place it out of the power of the Court to render a different judgment than the Court below. The Court will not grant an injunction when there is nothing to enjoin— nor will it grant an injunction when the subject-matter of the suit has passed by law out of the jurisdiction of the Court. This tax for 1859 by the amendments, is carried into the tax of 1860, and hence the predicate for this suit does not longer exist, and that being the case the Court cannot do otherwise than affirm the judgment of the Court below. This is, I believe, the well settled law in such cases. It is similar to proceedings in *quo warranto* to oust from office. When the term of office for which the defendant claims expires, during the pendency of the proceedings, in such cases the Courts do not render judgment of ouster. (*The State ex rel. Newman* v. *Jacobs*, 17 O. R., 143, 153). Therefore if this tax was illegal in 1859, and by the amendments to the city charter of 1860 is carried into and made a part of the tax of 1860, which is a legal tax, then the Court will not reverse the judgment of the Court below, as the reversal would not defeat the collection of this identical tax, though differing in the time of collection only, but would leave the plaintiffs liable to the two per cent. tax of 1860, and the right to collect in full force.

*By the Court,* KINGMAN, J.

This action in the Court below was brought to restrain by injunction the collection of a tax of one per cent. upon the real estate of the plaintiffs in the City of Atchison, levied to pay the interest on certain bonds issued by the authority of the city for certain railroad stock, and a tax of one per cent. for the improvement of streets and alleys in addition to one per cent. levied for general city revenue, and paid by plaintiffs, on the ground that the city had no power to impose such taxes. A judgment was rendered for the defendants below, which is brought here for review.

Section 11 of the charter of the City of Atchison (*Private Laws of* 1858, *p.* 175), provides: " That the Mayor and Board of Councilmen shall have power by ordinance to levy and collect taxes not exceeding one per centum upon real and personal property within the city, and upon property, lands, lots, interests or shares held, owned or claimed by any person or persons, company, firm, association or corporate body, whether the title of the United States thereto be extinguished or not, upon the assessed value thereof, and all moneys on hand or on deposit, bills of exchange, bonds, notes and other securities held upon solvent persons or corporations, over and above the just debts or liabilities of the owner or holder thereof. To levy and collect a poll tax, not exceeding one dollar per annum, upon every free male person over twenty-one and under fifty-five years of age. To levy and collect special tax on the holders of the lots in every street, lane, alley or avenue, according to their respective fronts owned by them, for the purpose of grading and improving the same, for curbing and paving the sidewalks and lighting such street, lane, avenue or alley. To levy and collect a tax on dogs, not exceeding five dollars each, per annum." And then proceeds to grant power to license and tax certain occupations, &c., but grants no further power to tax property.

By the 4th section of an act amendatory of said charter, passed Feb. 11th, 1859, it is provided that, "The Mayor and Council shall be authorized to levy a tax upon all real estate, lot or lots lying upon any street or alley for the grading, paving or macadamizing thereof, either by the front foot or the assessed value thereof."

These provisions contain all the powers of taxation expressly granted to the City of Atchison by its charter.  It will be seen that, the charter first confers the power of general taxation to the amount of one per centum upon real and personal property, and then proceeds to authorize the levy of a special tax on the holders of the lots in every street, lane, alley or avenue for the improvement of such streets, &c.

The language of the section clearly grants the power of taxation upon any or all the different streets, &c., as distinct taxation districts, and is therefore clearly intended, not as a part of the general tax of one per cent., but as additional to such general tax.

The amendment above cited authorizes such tax to be levied by the front foot of the property taxed, or the assessed value thereof.  And by the agreed statement of facts upon which this cause was tried, it appears that the assessment of tax for street improvements was upon the assessed value of the property abutting on the streets, and in strict conformity with the charter of the city as amended.

But it is claimed that the Legislature could not confer upon the city the right to impose such tax.

As the charter was passed and the tax levied during the existence of the territorial government, the powers of the Legislature are to be sought in the "Organic Act."

The 24th section of that act provides "That the legislative power of the Territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act.  But no law shall be passed interfering with the primary disposal

Burnes and others v. The Mayor and City Council of Atchison and others.

of the soil; no tax shall be imposed upon the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the property of residents."

This provision conferred upon the Territory all the legislative power of a State government, unrestricted by its constitution except in the particulars above stated.

The granting of municipal powers, including powers of local taxation, for the improvement of streets and other purposes, to cities and villages is an ordinary act of legislation in immemorial use, and probably exercised by every State and Territory in the Union, and no Court that we are aware of has ever pronounced such legislation void.

Whether a Legislature could authorize a municipal corporation to assess property for street improvements, not according to the value, but according to the supposed benefit to accrue from the improvement to the property taxed, has sometimes been questioned, though generally, if not uniformly, such legislation has been sustained. But the tax under consideration involves no such question. It was assessed according to value upon the property abutting the street to be improved, and differs from ordinary taxation only in being levied upon streets instead of larger districts. It is quite analagous in principle to the method of assessment of highway labor by districts in use in this and many other States. It is not taking private property for public use without just compensation, but a method of distributing among the citizens the public burthen of improving the streets. We think the assessment for improving streets was valid.

Section five of the act above cited amendatory of the charter, authorizes the sale of land for taxes, and we therefore see no grounds for restraining the collection in that manner of the tax under consideration.

The tax for the payment of interest on railroad bonds was for the payment of bonds issued under Section 30 of

the city charter, which reads as follows: "That the City of Atchison as hereby incorporated, shall have power to subscribe for stock in any railroad company proposing to build a railroad leading to or from said City of Atchison in Kansas Territory, or opposite to said city on the bank of the Missouri River, in the State of Missouri, provided that the stock subscribed for, and not actually paid in, shall not at any time exceed two hundred thousand dollars, and provided that said city shall not subscribe for more than one hundred thousand dollars of such stock in any one year, provided also that said city shall not subscribe for any such stock at any time until a proposition for thus subscribing shall have been submitted to a vote of the qualified voters in said city, and if a majority of the votes polled approve of the proposition the stock may be subscribed, otherwise it shall not be."

It is argued for the plaintiff that this section confers no authority to issue such bonds on the grounds: *first*, that the Legislature had no power to authorize the city to take railroad stock; and *second*, that the law requiring the proposition to subscribe to be submitted to the people for their approval, the subscription was void for that reason, within the principle of Barto *v.* Himrod, (8 N. Y., 483,) and kindred cases.

We will consider these points in their order.

We have already seen that the Legislature which passed the charter in question, was invested with all the powers of a State Legislature, without any constitutional restriction affecting the question under consideration, and we see no reason to doubt that the legislative power of a State extends to the creation of municipal corporations, and granting them such powers, not in conflict with the organic law of the State or nation, as the Legislature shall deem wise, relating to the public interests of the Territory included within the bounds of such corporation.

The apparent object of the Legislature in granting to the City of Atchison the power to subscribe for railroad stock

and raising a tax to pay for it, and of the city in exercising such power was by railroad connections to build up the material interests of that city. This was a legitimate object for public effort, and whether the policy adopted to effect it was wise or unwise, just or unjust, were questions addressed to the sound discretion of the Legislature, but in no degree affecting its power.

Does the provision for submitting the question for subscribing stock to a popular vote of the city invalidate the law?

The case of Barto v. Himrod, (4 Seld.. 483,) and other cases cited by the plaintiff upon this point are cases in which a proposed law affecting the whole State was submitted to the voters of the whole State to determine whether it should become a law. But the action complained of in this case is merely the submission of local questions of expenditure and taxation to the voters of the corporation which is to bear the expense and receive the benefits of it. If the Legislature might authorize the city to take railroad stock, it could make no difference with the legality of the act whether the question of subscribing for such stock were submitted to the whole body of corporators or to their representatives. If the one would be a delegation of legislative power the other would be equally so; the second question is merged in the first, and the authorities sustaining the first will also sustain the second.

The case of the Bank of Rome in the New York Court of Appeals, (18 N. Y., 38,) was an action for interest due upon a bond of the corporation issued for railroad stock, pursuant to an act of the Legislature authorizing the corporation to take stock in a railroad terminating at that village, and to issue bonds therefor, but providing that no subscription to the stock should be made nor bonds issued "under the act until it had been approved by two-thirds of all the electors who shall have paid a tax on personal or real estate in said village, whose names shall appear regu-

larly on the last village assessment roll in which " the vote is taken." The Court held that the Legislature had the power to authorize, the village to subscribe for the stock and issue its bonds, and that the submission of the question of making the subscription to the people, did not invalidate the act. After distinguishing that case as we have this from the case of Barto v. Himrod previously decided in the same Court, the learned judge delivering the opinion, proceeds to say : "The case is therefore in substance only a submission to a vote of the parties interested, of the question whether or not they choose that the municipal corporation should subscribe to the railroad; in other words the Legislature did not compel the village to subscribe, but creating by law the necessary machinery left it to the taxpayers to determine the matter."

The case of the Cincinnati, Zanesville and Willmington railroad v. The Commissioners of Clinton County, (1st Ohio State, 77,) involved the same points, with the difference only that the tax was assessed upon a county instead of a municipal corporation, and the Supreme Court of that State in an elaborate opinion maintained the same doctrine. The case of the City of St. Louis v. J. H. Alexander, (23d Mo. Rep., 483,) involved the same questions, and the Supreme Court of Missouri decided them in the same way. Other cases of similar import might be cited from different States were it deemed necessary.

That the proposed railroad was to be built outside the Territory of Kansas, cannot effect the case. The first object of the legislation in question is not the benefit of the State at large but of the municipality to bear the expense of the improvement.

In the case of the City of St. Louis v. Alexander above cited, the city subscribed for stock in the Ohio and Mississippi railroad, a work entirely outside of the State of Missouri, and the transaction was as we have already observed, sustained by the Supreme Court of that State.

Burnes and others v. The Mayor and City Council of Atchison and others.

We entertain no doubt that the City of Atchison had power to subscribe for railroad stock, and to issue bonds therefor pursuant to the provisions of its charter, and to pay the interest and principal of such bonds by a tax upon real and personal property within the limits of the city, provided that the whole amount of taxation assessed upon such property by the city government did not exceed in amount the limits prescribed by the city charter.

The general taxing power of the city government is limited to one per centum upon the real and personal property within the city by the express language of the charter. And there is no provision in the charter for any special tax for railroad purposes. One per cent. having been levied for general revenue, what power then remained to assess one per cent, for interest on railroad bonds?

It is argued that the power being given to subscribe for stock, the power to levy a tax to pay for such stock must be implied from its necessity. It would be better logic to say that the limitation on the power of taxation is and was intended to be a check upon the public expenditures of the city for railroad stock, as well as other purposes. In the case of the City of Leavenworth v. Margaret Norton et al. (1 Kans. R., 432,) substantially the same question was presented, and this Court held that the power of taxation could not be so implied.

We entertain no doubt that the assessment of the tax in question was unauthorized by law, and therefore void. But inasmuch as the petition presents no sufficient grounds for an injunction, the remedy at law being clear and undoubted, the decision of the Court below must be sustained.